IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JULISSA RUBIO, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> WINGSTOP GSR RESTAURANT, ET § <br> AL. § <br> § <br> Defendants. § | No. 3:24-cv-00660-K (BT) |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

*Pro se* plaintiff Julissa Rubio, proceeding *in forma pauperis*, sues her former employer, "Wingstop GSR Restaurant," her former general manager at Wingstop, and her former supervisor at Wingstop, claiming that Defendants retaliated against her in violation of federal law, her employment agreement, and company policy. *See generally* ECF No. 3 at 3-4.[1] But as explained below, Rubio's federal law claims fail to state a claim upon which relief can be granted, and the Court should dismiss those claims pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court should further dismiss her state-law claims without prejudice to her ability to pursue them in state court.

---

[1] Pursuant to 28 U.S.C. § 636(b) and a standing order of reference, this case was referred to the United States Magistrate Judge for pretrial management, including the issuance of findings and a recommended disposition where appropriate.

**Background**

Rubio claims that she was punished for reporting that her co-worker was harassed and bullied by their general manager. ECF No. 3 at 3-4. She claims that, after making an oral grievance to her supervisor, she received a "public demotion within the company group chat," was subject to harassment, transfer, and reduced hours, and was eventually terminated after Wingstop first unsuccessfully tried to constructively dismiss her. ECF No. 3 at 3-4. She alleges that she was fired for violating a "no call no show" policy, but this was inaccurate because her general manager admitted that Rubio called her and told her that Rubio was "already in the parking lot." ECF No. 3 at 3.

She claims that Defendants retaliated against her in violation of the False Claims Act, 31 U.S.C. § 3729 (FCA); the Sarbanes Oxley Act of 2002 (SOA); federal criminal law; her "initial employment agreement;" and company policy. ECF No. 3 at 3. She seeks damages for lost wages and benefits, punitive damages, and attorney fees. ECF No. 3 at 3.

**Legal Standards**

Under 28 U.S.C. § 1915(e), a district court may summarily dismiss a complaint filed *in forma pauperis* if it concludes that the action is: (1) frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atl.*

2

*Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

"A claim may be dismissed as frivolous if it does not have an arguable basis in fact or law." *Brewster v. Dretke,* 587 F.3d 764, 767 (5th Cir. 2009) (citing *Gonzalez v. Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998)).

## Analysis

1. <u>Rubio fails to plausibly allege an FCA *qui tam* relator or retaliation claim.</u>

Rubio alleges that Defendants retaliated against her in violation of the FCA. The FCA imposes civil liability on any person "who, among other things, knowingly presents, or causes to be presented, to an officer or employee of the federal government, a false or fraudulent claim for payment or approval." *United States ex Rel. v. Abbott,* 2023 WL 7002060, at *2 (W.D. Tex. Oct. 24, 2023), *rec. accepted* 2023 WL 8494392 (W.D. Tex. Dec. 6, 2023) (citing 31 U.S.C. § 3729(a)). "The federal government, or a private person (known as a 'relator'), may bring suit for the United States in a *qui tam* action where there has been fraud on the federal government." *Id.* (citing 31 U.S.C. § 3730(a), (b)(1)).

It is unclear whether Rubio seeks to assert a *qui tam* action. If she does, such a claim is meritless a because a *pro se* litigant may not bring a *qui tam* action on behalf of the United States. *See, e.g., Nuttall v. Dallas Indep. Sch. Dist.,* 2022 WL

3

3582777, at *2 (N.D. Tex. June 3, 2022) (citing *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93-94 (2d Cir. 2008); *Veal v. Walker*, 2013 WL 1386666, at *4 n.1 (N.D. Tex. Mar. 6, 2013). Accordingly, any *qui tam* action under the FCA should be dismissed with prejudice.

    The FCA also contains an antiretaliation provision under which:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). The elements of an FCA retaliation claim are that: "(1) the employee engaged in activity protected under the statute; (2) the employer knew that the employee engaged in protected activity; and (3) the employer discriminated against the employee because she engaged in protected activity." *United States ex rel. Graves v. ITT Educ., Inc.*, 284 F. Supp. 2d 487, 510 (S.D. Tex. 2003) (citations omitted).

    To engage in protected activity under the FCA, the employee need not have filed an FCA lawsuit or "have developed a winning claim at the time of the alleged retaliation." *United States ex rel. Karvelas v. Melsrose-Wakefield Hosp.*, 360 F.3d 220, 236 (1st Cir. 2004) (citing *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 741 (D.C. Cir. 1998)). "Instead, an employee's actions must be aimed at matters that reasonably could lead to a viable claim under the [FCA]." *U.S. ex*

4

*rel. George v. Boston Sci. Corp.*, 864 F.Supp.2d 597, 605 (S.D. Tex. 2012) (collecting cases). The standard is satisfied when "'(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government.'" *Id.* (citing *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 71 (D.C. Cir. 2008); *Schuhardt v. Washington Univ.*, 390 F.3d 563, 567 (8th Cir. 2004); *Fanslow v. Chicago Mfg. Ctr. Inc.*, 384 F.3d 469, 480 (7th Cir. 2004); *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002)); *see also Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) (per curiam) ("A protected activity is one motivated by a concern regarding fraud against the government.") (citing *Riddle v. Dyncorp Int'l, Inc.*, 666 F.3d 940, 941 (5th Cir. 2012)).

Rubio does not plausibly allege an FCA retaliation claim. As best the Court can tell, her alleged protected activity was complaining about a bullying incident. Rubio fails to provide any details about the incident, but there is no indication that she reasonably (or even subjectively) believed Wingstop was committing fraud against the government. She has not alleged any facts from which the Court could conclude that her actions allegedly causing the retaliation were "motivated by a concern for fraud against the government." *See Thomas*, 517 F. App'x at 262. The Court should dismiss Rubio's FCA retaliation claim with prejudice.

2. Rubio fails to plausibly allege a retaliation claim under the SOA.

Rubio alleges without explanation that Defendants retaliated against her in violation of the SOA, which "protects those who blow the whistle on their

5

employer's failure to comply with Securities and Exchange Commission reporting requirements." *Wallace v. Andeavor Corp.*, 916 F.3d 423, 425 (5th Cir.), *cert. denied*, 140 S. Ct. 206 (2019). Under the SOA, registered companies are prohibited from:

> dicharg[ing], demot[ing], suspend[ing], threaten[ing], harass[ing], or in any other manner [discriminat[ing] against an employee in the terms and conditions of employment because of any lawful act done by the employee to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders…

18 U.S.C. § 1514A(a); *see also Wallace v. Tesoro Corp.*, 796 F.3d 468, 474 (5th Cir. 2015) (quoting 18 U.S.C. § 1514A(a)). "Essentially, the employee has to provide information or assist in an investigation that he reasonably believes relates to one or more of six categories of laws and regulations: four specific types of fraud, a federal offense that relates to fraud against shareholders, or a rule or regulation of the SEC." *Wallace*, 796 F.3d at 474.

Rubio alleges noting like that. Instead, she claims that she complained about bullying. Because she does not allege that she engaged in protected activity under the SOA, the Court should dismiss her SOA retaliation claim with prejudice.

3. <u>Rubio cannot pursue a claim under a federal criminal statute</u>.

Rubio also claims that Defendants retaliated against her in violation of 18 U.S.C.§ 1513—a criminal statute which prohibits obstruction of justice by

retaliating against a witness, victim, or informant. But unless specifically provided for in the statute, alleged violations of criminal statutes do not provide a private right of action. *See*, *e.g.*, *Sandifer v. Hopkins*, 2018 WL 321951, at *4 (E.D. La. Jan. 8, 2018) (collecting cases). Because Section 1513 does not contain any language showing that it supplies a private right of action, Rubio cannot state a claim under it. *See*, *e.g.*, *Hao Liu v. City of Allen*, 2018 WL 2144363, at *4 (E.D. Tex. Mar. 12, 2018), *rec. accepted* 2018 WL 2129451 (E.D. Tex. May 9, 2018) ("To the extent Plaintiff is seeking to pursue a claim pursuant to 18 U.S.C. § 1513, it is a criminal statute and does not provide any basis for a private cause of action.") (cleaned up and collecting cases).

Rubio's Section 1513 claim is meritless, and the Court should dismiss it with prejudice.[2]

---

[2] Rubio also references the First Amendment. ECF No. 3 at 1. If Rubio is claiming that Defendants retaliated against her in violation of the First Amendment, "[t]he First Amendment limits government interference with speech, but not private interference, so First Amendment retaliation claims generally only apply against public employers, not private employers." *Mahoney v. Beacon Health Ventures*, 585 F. Supp. 3d 1161, 1167 (N.D. Ind. 2022) (citing *Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 420 (7th Cir. 1988)); *see also Vandermark v. City of New York*, 615 F. Supp. 2d 196, 210 (S.D.N.Y. 2009) ("The First Amendment does not provide a right to be free from restrictions on speech and association imposed by private actors."). An exception to this rule is when challenged private action has a "sufficiently close nexus" to the state so that the challenged action can be fairly considered an action of the state itself. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). Rubio does not allege that Defendants were public employers or any facts from which the Court could infer a nexus between their alleged retaliation and state action. She therefore fails to state a First Amendment claim under 42 U.S.C. § 1983 to the extent that she seeks to bring one.

7

4. <u>The Court should decline to exercise supplemental jurisdiction over Rubio's state-law claims.</u>

As explained, Rubio has not plausibly alleged that she is entitled to relief based on a claim arising under federal law, the alleged violations of which provide for federal question jurisdiction under 28 U.S.C. § 1331, "an independent basis for subject matter jurisdiction" that then allows for supplemental jurisdiction under 28 U.S.C. § 1367. *Atkins v. Propst*, 2023 WL 2658852, at *2 (5th Cir. Mar. 28, 2023) (per curiam) (citing *Arena v. Graybar Elec. Co.*, 669 F.3d 214 (5th Cir. 2012)).

Rubio appears to also allege that Defendants retaliated against her in violation of unspecified company policy and an "initial employment agreement." ECF No. 3 at 3. These causes of action sound in breach of contract, which is typically a state-law claim.[3] *See, e.g.*, *Escobar v. All. Credit Union*, 2023 WL 8720903, at *4 (N.D. Tex. Nov. 30, 2023) (recognizing a breach of contract claim normally arises under state law).

To determine whether the Court should "relinquish jurisdiction over pendant state law claims," a court looks to "statutory factors set forth by 28 U.S.C. § 1367(c)"— "(1) whether the state claims raise novel or complex issues of state law;

---

[3] Rubio has not alleged an independent jurisdictional basis for these claims, as she does not allege complete diversity among the parties or that the amount in controversy exceeds $75,000. *See, e.g.*, *Davis v. Allstate Vehicle and Prop. Ins.*, 622 F. Supp. 3d 333, 335 (N.D. Tex. 2022) ("Diversity jurisdiction exists if the amount in controversy exceeds $75,000 and all parties are completely diverse.") (citing 28 U.S.C. § 1332(a)).

(2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction"—as well as "the common law factors of judicial economy, convenience, fairness, and comity" set forth by *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158-59 (5th Cir. 2011). In undertaking this analysis, "no single factor is dispositive," *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008), and "[t]he overall balance of the statutory factors is important." *Enochs*, 641 F.3d at 159 (citation omitted).

"As a general rule, a federal court should decline to exercise jurisdiction over pendant state claims when all federal claims are disposed of prior to trial." *Brim v. ExxonMobil Pipeline Co.*, 213 F. App'x 303, 305 (5th Cir. 2007) (per curiam) (citations omitted); *see also Parker & Parsley Petroleum Co. v. Dresser Ind.*, 972 F.2d 580, 586 (5th Cir. 1992) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Because this case is still in its infancy and there has not been a significant expenditure of this Court's judicial resources, the balance of factors to be considered favors dismissing the state-law claims to allow Rubio to pursue them in state court.

9

**Leave to Amend**

Generally, a *pro se* litigant should be offered an opportunity to amend her complaint before it is dismissed. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). But leave to amend is not required if the plaintiff has already pleaded her "best case." *Id.* "A plaintiff has pleaded her best case after she is 'apprised of the insufficiency' of her complaint." *Wiggins v. Louisiana State Univ.—Health Care Services Division*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citing *Dark v. Potter*, 293 F. App'x 254, 257 (5th Cir. 2008)) (further citation omitted). And while a court should freely grant leave to amend when justice so requires, "a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) (citations omitted).

The opportunity to file objections to this recommendation (explained in further detail below) gives Rubio—now having been advised of the deficiencies in her complaint—a chance to plead her best case by stating what material facts she would include in an amended complaint to overcome those deficiencies. *See Wiggins*, 710 F. App'x at 627 ("A plaintiff may indicate she has not pleaded her best case by stating material facts that she would include in an amended complaint to overcome the deficiencies identified by the court.").

But unless Rubio explains how she could cure the deficiencies noted above in an amended complaint, the Court should dismiss her federal claims with prejudice and decline to exercise jurisdiction over her state-law claims.

## Recommendation

The Court should dismiss Rubio's federal claims with prejudice under § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted and dismiss the remaining state-law claims without prejudice to Rubio's ability to pursue those claims in state court.

DATED March 29, 2024.

_____
HON. REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE


INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).